JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Goddard Systems, Inc.

**DEFENDANTS**
Stephen A. Wortman and Carol A. Wortman and Noel L. Wortman and Kyung Nam-Wortman and School Equities, L.L.C.

**(b)** County of Residence of First Listed Plaintiff   Montgomery, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Monmouth, NJ
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Constantine T. Fournaris, Wiggin and Dana LLP, 50 S. 16th Street, Two Liberty Place, Suite 2925, Philadelphia, PA  19102; Tel:  212 988-8311

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**  **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane  ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product  Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability  ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &  Pharmaceutical | | ☐ 820 Copyrights | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander  Personal Injury | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'  Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability  ☐ 368 Asbestos Personal | | | Corrupt Organizations |
| Student Loans | ☐ 340 Marine  Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product  Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability  **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle  ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle  ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability  ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal  Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☒ 196 Franchise | Injury  ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury -  Product Liability | Leave Act | | Act |
| | Medical Malpractice | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS**  **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights  **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting  ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment  ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/  Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations  ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -  ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment  **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities -  ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other  ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education  ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332; 28 U.S.C. § 1391
Brief description of cause:
Franchise expiration/termination enforcement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** > 75,000.00

CHECK YES only if demanded in complaint
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

OCT - 7 2015

DATE   10/6/15

SIGNATURE OF ATTORNEY OF RECORD   Constantine T. Fournaris

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT

**MSG**

FOR THE EASTERN DISTRICT ... PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

**15 5519**

Address of Plaintiff: 1016 W. Ninth Street, King of Prussia, PA 19406

Address of Defendant: 17 Londonberry Drive, Holmdel, NJ 07733; 160 Douglass Avenue, Bernardsville, NJ 07924 and 400 Gill Lane, Iselin, NJ 08830

Place of Accident, Incident or Transaction: 1016 W. Ninth Avenue, King of Prussia, PA 19406
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))  Yes☐  No☐

Does this case involve multidistrict litigation possibilities?  Yes☐  No☐

RELATED CASE, IF ANY:

Case Number: _____  Judge _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?  Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. Federal Question Cases:

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify) _____

B. Diversity Jurisdiction Cases:

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☒ All other Diversity Cases
(Please specify) Franchise Contract

**ARBITRATION CERTIFICATION**
(Check Appropriate Category)

I, Constantine T. Fournaris , counsel of record do hereby certify:
☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☒ Relief other than monetary damages is sought.

DATE: 10/6/15     _Constantin T Fournaris_     #63902
                    Attorney-at-Law              Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 10/6/15     _Constantin T Fan_
                    Attorney-at-Law

CIV. 609 (5/2012)

OCT 7

# IN THE UNITED STATES DISTRICT COURT
# THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Goddard Systems, Inc.                         :         CIVIL ACTION

                     v.                       :

Stephen A. Wortman, et al.                    :         NO. 15        5519

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.            ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                             ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X)

| | | |
|---|---|---|
| 10/6/15 | Constantine T. Fournaris | Goddard Systems, Inc. |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215 988 8311 | 215 988 8344 | cfournaris@wiggin.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

OCT -7 2015

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

GODDARD SYSTEMS, INC.
1016 W. Ninth Avenue,
King of Prussia, Pennsylvania 19406.

     Plaintiff

     v.

STEPHEN A. WORTMAN
17 Londonberry Drive
Holmdel, New Jersey 07733

and

CAROL A. WORTMAN
17 Londonberry Drive
Holmdel, New Jersey 07733

and

NOEL L. WORTMAN
160 Douglass Avenue
Bernardsville, New Jersey 07924

and

KYUNG NAM-WORTMAN
160 Douglass Avenue
Bernardsville, New Jersey 07924

and

SCHOOL EQUITIES, L.L.C.
400 Gill Lane
Iselin, New Jersey 08830

     Defendants

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

15  5519

CIVIL ACTION NO.

JURY TRIAL NOT DEMANDED

## COMPLAINT FOR SPECIFIC PERFORMANCE, MONEY DAMAGES AND OTHER RELIEF

## THE PARTIES

1.      Goddard Systems, Inc. ("GSI") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business at 1016 W. Ninth Avenue, King of Prussia, Pennsylvania 19406.

2.      Defendants Stephen A. Wortman and Carol A. Wortman are husband and wife and residents of the State of New Jersey, with a home address of 17 Londonberry Drive, Holmdel, New Jersey 07733.  Defendants Noel L. Wortman and Kyung Nam-Wortman are husband and wife and residents of the State of New Jersey, with a home address of 160 Douglass Avenue, Bernardsville, New Jersey 07924.

3.      Defendants Stephen A. Wortman, Carol A. Wortman, Noel L. Wortman, and Kyung Nam-Wortman are collectively referred to as the "Wortmans".

4.      Defendant School Equities, L.L.C. is a New Jersey limited liability company with an address of 400 Gill Lane, Iselin, New Jersey 08830.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are residents of different states, and the amount in controversy (including, without limitation, the value of the rights at issue in this dispute) exceeds $75,000, exclusive of interest and costs.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

7.      Jurisdiction and venue are also proper in this court under the terms of the applicable Franchise Agreement dated June 30, 2000 (*see* **Exhibit 1**, ¶ 23B).

2

## BACKGROUND

8.      GSI is the franchisor of THE GODDARD SCHOOL® preschools, which specialize in offering to the public preschool early education programs for children.

9.      Through years of experience, GSI has developed an operating system consisting of (among other things) specially designed standards and specifications, business information, curricula, advertising and marketing materials, identification schemes, training programs, management programs, interior and exterior accessories, and GSI-approved equipment and equipment layouts (the "Goddard System").

10.     GSI is the owner of all of the right, title and interest in and to certain trade names, trademarks and service marks, including the mark THE GODDARD SCHOOL® and other related marks (the "Proprietary Marks"), which are utilized in the operation of the Goddard System. GSI owns numerous registrations for the mark THE GODDARD SCHOOL®, and related marks. Each of these registrations has been properly registered by GSI on the Principal Register in the United States Patent and Trademark Office and is in full force and effect.

11.     The registered Proprietary Marks are famous and have acquired secondary meaning in that they are widely recognized by the general consuming public of the United States as a designation of source of the goods or services of GSI and its licensed franchisees.

12.     The mark THE GODDARD SCHOOL® and the other Proprietary Marks are utilized in interstate commerce.

13.     GSI has developed proprietary know-how, trade secrets and unique and successful methods of early childhood education, and has developed a unique, uniform system relating to the operation of THE GODDARD SCHOOL® preschools (the "Franchised Business"). Distinguishing characteristics of the Franchised Business include the Proprietary Marks, the

3

latest available data and information concerning market analysis, procurement of students, sales and merchandising methods, training of franchisees and school personnel, advertising techniques, record-keeping and business management.

14. The goodwill and reputation associated with the Proprietary Marks are impaired when a franchisee fails to maintain standards and operates a non-conforming or unsafe business under THE GODDARD SCHOOL® trademarks and service marks.

15. GSI and its franchises have for many years spent substantial sums of money promoting THE GODDARD SCHOOL® preschools. As a result of this extensive promotion, valuable goodwill has been developed for the Proprietary Marks and for THE GODDARD SCHOOL® preschools, products and services that bear the Proprietary Marks and thus identify GSI as their sponsor and source.

16. The business relationship between GSI and its franchisees is governed by the terms and conditions of a franchise agreement between GSI and each franchisee.

17. There are over 425 GSI franchisees nationwide, each licensed to use the Proprietary Marks and to operate under GSI's business system, utilizing specially designed standards and specifications, business information, curricula, advertising and marketing materials, identification schemes, training programs, management programs, interior and exterior accessories, and GSI-approved equipment and equipment layouts.

## THE FRANCHISE AGREEMENT

18. On or about June 30, 2000, the Wortmans entered into a Franchise Agreement and a related Amendment with GSI's predecessor in interest, Carousel Systems Inc., (collectively, the "Franchise Agreement") under which they were granted the right and undertook the

4

obligation to operate THE GODDARD SCHOOL® preschool at 400 Gill Lane, Iselin, New Jersey 08830 (the "School"). *See* Franchise Agreement, attached as **Exhibit 1**.

19.     On or about June 30, 2000, the Wortmans and School Equities, L.L.C. (collectively, the "Franchisees") executed an Assignment and Assumption Agreement (the "Assignment," attached as **Exhibit 2**), under which the Wortmans assigned all of their rights and obligations under the Franchise Agreement to School Equities, L.L.C., and School Equities, L.L.C. assumed all of their rights and obligations under the Franchise Agreement.  Under the Assignment, the Wortmans expressly agreed to continue to be bound by the Franchise Agreement and to be the unconditional guarantors of all of the obligations of School Equities, L.L.C.

20.     On or about March 5, 2002, Carousel Systems Inc. assigned all of its rights and obligations under the Franchise Agreement and the Assignment to GSI and GSI assumed the obligations of Carousel Systems Inc. under the Franchise Agreement and Assignment.

21.     The initial term of the Franchise Agreement commenced on the date of the Franchise Agreement (June 30, 2000) and was set to last for an initial term of 15 years (until June 30, 2015). *See* Franchise Agreement (Ex. 1), ¶ 2.A.

22.     Under the terms of the Franchise Agreement and the Assignment, School Equities, L.L.C. had the right, at its option, to renew the Franchise Agreement for additional periods of five years each, provided that:

   A.     Franchisee has given [GSI] written notice of election to renew not less than six (6) months nor more than twelve (12) months prior to the end of the initial or current renewal term, as the case may be (Franchise Agreement (Ex. 1), ¶ 2.B(1));

   B.     Franchisee is not in default of any provision of the Franchise Agreement, any amendment of the Franchise Agreement or any other Agreement between Franchisee and [GSI], or its subsidiaries and affiliates, and has

5

substantially complied with all the terms and conditions of such agreements during the terms thereof (Franchise Agreement (Ex. 1), ¶ 2.B(2));

C.    Except as limited by applicable law, Franchisee must execute a general release in favor of [GSI] and its officers, directors, shareholders and employees, in their corporate and individual capacities (Franchise Agreement (Ex. 1), ¶ 2.B(3)); and

D.    Franchisee agrees to execute upon renewal [GSI]'s then current form of Franchise Agreement, which agreement shall supersede in all respects the Franchise Agreement, and the terms of which may differ from the terms of the Franchise Agreement including without limitation, a higher percentage franchise fee and advertising contribution; provided, however, in no event shall an initial license or initial franchise fee be imposed upon any such renewal (Franchise Agreement (Ex. 1), ¶ 2.B(4)).

23.    Under the terms of the Franchise Agreement and the Assignment, Franchisees received a limited license during the term of the Franchise Agreement to use the Proprietary Marks, to utilize GSI's latest available data and information concerning early childhood education, and to employ the Goddard System.

24.    Under the terms of the Franchise Agreement, the Franchisees were required to pay GSI a continuing monthly royalty fee during the term of the Franchise Agreement equal to eight percent (8%) of the gross receipts of the School, plus monthly advertising contributions. *See* Franchise Agreement ¶ 4.A.(3) and 5.B.

25.    Under the Franchise Agreement, the Franchisees' right to use the Proprietary Marks is limited. For example, Paragraph 7 of the Franchise Agreement (Ex. 1) provides in relevant part:

(a)    "Franchisee's right to use the Proprietary Marks is derived solely from this Agreement and is limited to the conduct of the business by Franchisee pursuant to and in compliance with this Agreement." Paragraph 7.A.

(b)    "Franchisee agrees that after termination or expiration of this Agreement he or she will not directly or indirectly at any time or in any manner identify himself or any business as a current or former Goddard School or as

6

otherwise associated with [GSI], or use in any manner or for any purpose the Proprietary Marks or any colorable imitation thereof." Paragraph 7.B.

(c) "Franchisee shall promptly notify [GSI] of any use by any person or legal entity other than [GSI] or another of its franchisees of any Proprietary Marks, any colorable variation thereof, or any other mark in which [GSI] has or claims a proprietary interest." Paragraph 7.D.

26. Under the Franchise Agreement, the Franchisees agreed, among other things, not to use or disclose GSI's trade secrets and confidential and proprietary information for unauthorized purposes (the "Covenant of Confidentiality"):

Franchisee shall not, during the term of this Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, association or corporation, any trade secrets or confidential information, knowledge, or know-how concerning the methods of operation of a School which may be communicated or disclosed to Franchisee, or of which Franchisee may be apprised, by virtue of Franchisee's operation under the terms of this Agreement. ...

Franchise Agreement (Ex. 1), ¶ 9.

27. Upon termination or expiration of the Franchise Agreement, the Franchisees must, among other things: (a) immediately cease to operate the business franchised under the Franchise Agreement, and not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former franchisee of Goddard; (b) immediately and permanently cease to use, by advertising or in any manner whatsoever, any equipment, confidential methods, procedures and techniques associated with the Goddard System; the trade and service mark "The Goddard School," and any Proprietary Marks and distinctive forms, slogans, signs, symbols or device associated with the Goddard System; (c) promptly pay all amounts due to GSI; and (d) immediately turn over to GSI all manuals, including the Manual, records, files, instructions, correspondence, all materials related to operating the franchised business including, without

7

limitation, brochures, agreements and any and all other materials relating to the operation of the School in Franchisee's possession. Franchise Agreement (Ex. 1), ¶ 14.A, B, E and F.

28.    The Franchisees also agreed that for a period of three (3) years after the expiration or termination of the Franchise Agreement, regardless of the cause of termination, or the date upon which Franchisee ceases to operate the franchised business, whichever is later, they would not, either directly or indirectly, for themselves or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation: (i) divert or attempt to divert any business or customer of the School to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with GSI's trade names, trademarks, proprietary marks or business system; (ii) employ or seek to employ any person who is at that time employed by GSI or by any other franchisee of GSI or otherwise directly or indirectly induce such person to leave his or her employment; and (iii) own, maintain, engage in, be employed by or have any interest in any child day care or preschool learning center or business (other than another duly licensed THE GODDARD SCHOOL® franchise) within a ten-mile radius of the School or any existing or proposed THE GODDARD SCHOOL® location. Franchise Agreement (Ex. 1), ¶ 16.B and C(2).

29.    Under paragraph 23.E of the Franchise Agreement, Franchisees agreed that, in any action brought to enforce GSI's rights under the Franchise Agreement, GSI is entitled to recover, in addition to any other recovery, reasonable attorneys' fees together with court costs and expenses of litigation.

## THE APPLICABLE REGULATORY REGIME

30.    The business of offering and selling franchises is regulated in the United States. In particular, the Federal Trade Commission ("FTC") Franchise Rule, which was originally

8

adopted in January 1978 and revised in January 2007 (the "Amended FTC Rule"), imposes disclosure requirements and also prohibits certain sales practices deemed by the FTC to be deceptive.

31.     Upon information and belief, and at all times relevant to the specific renewal process between GSI and Franchisees described in this Complaint (which involved a contractually prescribed opportunity for renewal conditioned upon, among other things, Franchisees signing GSI's then-current form of franchise agreement), GSI was required by applicable federal rules and regulations regarding the offer and sale of franchises to provide the Franchisees with a written franchise disclosure document (the "FDD") in a form mandated by the Amended FTC Rule and no fewer than 14 calendar days before a franchise agreement may be signed (i.e., the applicable mandated "cooling off" or waiting period).

32.     Under the Amended FTC Rule, a franchisor must include within its FDD two so-called FDD Receipt pages, one of which must then be properly and accurately completed, fully executed and returned by the prospective franchisee to the franchisor.

33.     The Amended FTC Rule's FDD Receipt requirement is intended to demonstrate and document that the appropriate individuals and/or entities required to receive disclosure under the Amended FTC Rule did in fact receive a current FDD (including the proposed agreements set forth therein) in a form mandated by the Amended FTC Rule and no fewer than 14 calendar days before the franchise agreement is signed.

34.     The Amended FTC Rule also requires that a franchisor provide to all prospective franchisees a copy of the final signature-ready franchise agreement and other documents no fewer than seven days before they are signed. Accordingly, many franchisors (including GSI) provide an additional receipt page – the Franchise-Related Documents ("FRD") Receipt –

9

intended to demonstrate and document that the appropriate individuals and/or entities required to receive disclosure under the Amended FTC Rule did in fact receive all final franchise-related documents at least seven calendar days before the franchise agreement is signed.

35. Under the Amended FTC Rule, franchisors (including GSI) are generally required to (and, even where not required, often do as a matter of a broader compliance program) retain a copy of each signed FDD Receipt and FRD Receipt for at least three years post-franchise agreement execution in order to demonstrate compliance with the Amended FTC Rule's disclosure and record-keeping requirements and to protect themselves from, among other things, false claims that a particular franchisee did not receive disclosure or relied upon alleged statements or representations not made in and/or in conflict with the express contents of their respective received FDD.

36. In addition, because the FTC Rule strictly prohibits franchisors from providing information to prospective franchisees concerning actual, average, projected or forecasted sales, profits or earnings ("Financial Performance Representations" or "FPRs") – other than information provided within the FDD in a form mandated by the FTC Rule – many franchisors (including GSI) require prospective franchisees to acknowledge that they have not received any unauthorized FPRs before signing a franchise agreement, in order to protect themselves from false claims of unauthorized FPRs.

37. GSI's Disclosure Acknowledgment Statement, which is required to be completed by all persons at the time that the franchise agreement is signed, includes the following language in bold print:

> If I believe that I have received information concerning actual, average, projected or forecasted franchise sales, profits or earnings other than the information contained in GSI's disclosure document, or other than actual records of an existing school that I was considering buying, this additional

10

information is described in the space below; or, if I have received no such information I have written "None" below.

38. As part of its broader compliance program to ensure that all federal and state requirements are observed in their respective franchise sales programs, and to protect itself from false claims, GSI requires, among other things, that: (a) all franchisees signing the franchise agreement have signed and properly dated the FDD Receipt to demonstrate that they received their FDDs at least 14 days before signing the franchise agreement; (b) all franchisees signing the franchise agreement and ancillary documents have signed and properly dated the FRD Receipt to demonstrate that they received these documents at least seven days before signing the franchise agreement; (c) the Disclosure Acknowledgment Statement is signed and completed; and (d) the franchise agreement, other agreements and guarantees are all fully signed and witnessed (or, as the case may be, notarized) by the proper entity and/or individuals, before GSI will accept, sign and return the franchise agreement and ancillary documents.

## THE FRANCHISEES BREACH THE FRANCHISE AGREEMENT AND FAIL TO DISCHARGE ALL THEIR RENEWAL OBLIGATIONS

39. Pursuant to its terms, the Franchise Agreement was set to expire on June 30, 2015.

40. GSI notified and repeatedly reminded Franchisees repeatedly – in June 2014, April 2015, May 2015 and June 2015 – of their Franchise Agreement's impending expiration and their obligation to complete certain renewal documents.

41. By Notice of Impending Franchise Agreement Expiration dated June 11, 2015 (the "Notice of Expiration"), GSI provided Franchisees with a final execution copy of the renewal form of Franchise Agreement and all ancillary documents to be signed and returned to GSI. In the Notice of Expiration, GSI also advised Franchisees that in order for the Franchisees to continue operating as a Goddard franchisee after June 30, 2015, Franchisees were required to

11

renew the Franchise Agreement pursuant to its terms and conditions. A true and correct copy of the Notice of Expiration is attached to this Complaint as **Exhibit 3.**

42.     GSI received some renewal-related documents from Franchisees on June 30, 2015, but the documents were deficient and incomplete in several respects. In particular: (1) the FDD Receipt was missing; (2) the FRD Receipt was neither dated accurately (i.e., to reflect receipt of the final documents more than seven days before execution) nor signed by Stephen and Carol Wortman; (3) the Disclosure Acknowledgement Statement was missing Stephen and Carol Wortman's signatures, and the statement regarding unauthorized FPRs, requiring a written response, was left blank; (4) the Franchise Agreement was missing Kyung Nam-Wortman's signature notarization and Stephen and Carol Wortman's signatures and notarizations; (5) the Renewal Amendment was missing Stephen and Carol Wortman's signatures; (6) the Assignment Agreement was missing Stephen and Carol Wortman's signatures; (7) the Termination Agreement was missing Kyung Nam-Wortman's signature notarization and Stephen and Carol Wortman's signatures and notarizations; and (8) the Option to Lease and Right of First Refusal was missing Stephen and Carol Wortman's signatures. In addition, Franchisees failed to return a completed Automatic Debit Authorization, which was required under the terms of the Franchise Agreement to be executed and received by GSI.

43.     By electronic mail dated June 30, 2015, Cindy Chapman, GSI's Director of Contract Administration, wrote to Franchisees and itemized the incomplete and missing items from Franchisees' renewal package documents. A true and correct copy of the June 30, 2015 e-mail (including, the itemized list of incomplete and missing items from Franchisees' renewal package) is attached to this Complaint as **Exhibit 4.** GSI attached to the June 30, 2015 e-mail all of the renewal package documents required to be signed by Franchisees in order to complete

12

the renewal of the Franchise Agreement and admonished the Franchisees again that their attempt at renewal would be deemed by GSI to be ineffective until all their deficiencies had been corrected.

44.     After the June 30, 2015 e-mail was issued, Franchisees again failed to execute and return the renewal package documents as requested and to cure their deficiencies.

45.     By Notice of Franchise Agreement Expiration/Final Opportunity to Renew dated July 8, 2015 (the "Final Opportunity to Renew"), Franchisees were again provided a final opportunity to complete the Franchise Agreement renewal process. The Final Opportunity to Renew directed Franchisees to execute, notarize, date and return properly (as indicated) the renewal documents to GSI by no later than July 20, 2015; another copy of the renewal documents was enclosed. GSI notified Franchisees that they should consider the letter as GSI affording Franchisees final notice and a final opportunity to renew their Franchise Agreement and warned Franchisees that, if GSI did not receive the properly executed, notarized (where indicated), and dated documents by July 20, 2015, Franchisees would be considered ineligible for renewal, and GSI would be compelled to take further appropriate action. A true and correct copy of the Final Opportunity to Renew is attached to this Complaint as **Exhibit 5**.

46.     On July 14, 2015, Noel Wortman emailed GSI, promising to have the documents completed. However, GSI never received any documents, and Franchisees failed to communicate further with GSI in any way regarding renewal.

47.     GSI has attempted repeatedly to work with Franchisees in an effort to assist them in satisfying GSI's requirements and Franchisees' obligations under the Franchise Agreement regarding renewal.

13

48. Franchisees failed to satisfy the conditions and requirements for renewal under the Franchise Agreement by not executing the documents required by GSI for renewal.

49. For the reasons set forth above, the Franchisees failed to achieve substantial compliance with the requirements of the Franchise Agreement and its express conditions for renewal.

50. Franchisees have continued to operate the School since June 30, 2015 and are operating the School as of the date of this Complaint.

51. By this Complaint, GSI seeks to enforce the terms of and Franchisees' obligations under the Franchise Agreement regarding renewal.

## COUNT I

### Money Damages for Breach of Franchise Agreement

52. GSI incorporates the allegations contained in the preceding paragraphs as if fully set forth in this paragraph.

53. Franchisees' conduct as described above breached the Franchise Agreement.

54. By way of non-exhaustive example, the Franchisees breached the Franchise Agreement by continuing to operate the School after June 30, 2015 as a THE GODDARD SCHOOL while simultaneously:

(a) failing to renew the Franchise Agreement by executing in full and as requested GSI's then current form of Franchise Agreement;

(b) failing to cure and otherwise satisfy the itemized list of incomplete and missing items from Franchisees' renewal package as set forth above and in the June 30, 2015 e-mail; and

14

(c)     failing to execute, notarize, date and return (as indicated) to GSI the renewal documents enclosed with June 30, 2015 email;

(d)     failing to execute, notarize, date and return (as indicated) to GSI the renewal documents enclosed with the Final Opportunity to Renew; and

(e)     failing to satisfy GSI's requirements and Franchisees' obligations under the Franchise Agreement regarding renewal.

55.     Franchisees' continuing violations of and failures to perform under the Franchise Agreement have caused injury to GSI as set forth above, including without limitation the risk of actual or perceived non-compliance with the FTC Rule absent the requested relief, the risk of an invalid or otherwise imperfect renewal, the risk of lost rights or remedies against some or all of the Franchisees due to their failures to execute and notarize their signatures, and the cost of securing Franchisees' compliance with the Franchise Agreement's terms and conditions.

56.     As a direct result of the Franchisees' conduct, GSI has suffered damages and irreparable harm to its business interests.

57.     Pursuant to Paragraph 23.E, GSI is entitled to its costs and reasonable attorneys' fees incurred in enforcing Franchisees' obligations under the Franchise Agreement.

### COUNT II

### Specific Performance for Breach of Franchise Agreement

58.     GSI incorporates the allegations contained in the preceding paragraphs as if fully set forth in this paragraph.

59.     Franchisees have breached the Franchise Agreement by accepting the benefits of the renewal form of Franchise Agreement offered by GSI and continuing to operate the School after June 30, 2015 as a THE GODDARD SCHOOL while simultaneously:

15

(a)     failing to renew the Franchise Agreement by executing in full and as requested GSI's then current form of Franchise Agreement;

(b)     failing to cure and otherwise satisfy the itemized list of incomplete and missing items from Franchisees' renewal package as set forth in the June 30, 2015 e-mail; and

(c)     failing to execute, notarize, date and return (as indicated) to GSI the renewal documents enclosed with June 30, 2015 email;

(d)     failing to execute, notarize, date and return (as indicated) to GSI the renewal documents enclosed with the Final Opportunity to Renew; and

(e)     failing to satisfy GSI's requirements and Franchisees' obligations under the Franchise Agreement regarding renewal.

60.     GSI has a right to obtain Franchisees' specific performance of Franchisees' duties and obligation under paragraph 2.B of the Franchise Agreement, GSI has no adequate remedy at law, and justice requires that Franchisees' specific performance of Franchisees' duties and obligations under paragraph 2.B of the Franchise Agreement.

## COUNT III

### Declaratory Judgment – Renewal/Expiration of Franchise Agreement

61.     GSI incorporates the allegations contained in the preceding paragraphs as if fully set forth in this paragraph.

62.     Pursuant to 28 U.S.C. §§ 2201 and 2202, the Court has jurisdiction to determine disputes between GSI, on the one hand, and Franchisees, on the other, concerning the parties' respective obligations and performance under the Franchise Agreement regarding renewal.

63.     A dispute currently exists between the parties as to whether Franchisees have properly discharged their duties and obligations under the Franchise Agreement regarding

16

renewal. To resolve this dispute, GSI requests that the Court declare that: (a) Franchisees have failed to comply with the requirements and discharge the conditions for renewal of the Franchise Agreement; (b) Franchisees are in default of and have otherwise breached their obligations under the Franchise Agreement and the Assignment regarding renewal; and (c) GSI has a right to obtain and justice requires that Franchisees be required to provide specific performance and, accordingly, Franchisees should be directed to immediately execute, notarize, date and return (as indicated) to GSI the renewal documents enclosed with June 30, 2015 email and the Final Opportunity to Renew, and to otherwise cure and satisfy the itemized list of incomplete and missing items from Franchisees' renewal package as set forth in the June 30, 2015 e-mail and the Final Opportunity to Renew.

64. In the alternative, Franchisees' breaches of the Franchise Agreement as described above constitute material defaults under the Franchise Agreement and, at GSI's election, the Franchise Agreement may be deemed to be lawfully expired by GSI, subject to any then-remaining, non-discharged requirement for GSI to provide notice of default and an opportunity to cure to GSI, if any.

65. In the alternative, because the Franchisees failed, among other things, to satisfy or otherwise discharge the express conditions for renewal under the Franchise Agreement: (a) the Franchise Agreement expired pursuant to its terms on June 30, 2015; (b) as of June 30, 2015, the Franchisees had no further rights with regard to the Franchise Agreement under the Franchise Agreement or applicable law; and (c) by ignoring the express terms for renewal set forth in the Franchise Agreement and the Notice of Expiration, the Franchisees in effect chose not to renew the Franchise Agreement, but rather to let the Franchise Agreement expire.

17

66.     In the alternative, GSI requests that the Court declare that: (a) Franchisees failed to comply with the requirements of the Franchise Agreement and its express conditions for renewal; (b) Franchisees failed to satisfy or otherwise discharge the express conditions for renewal under the Franchise Agreement; and (c) as of June 30, 2015, the Franchise Agreement expired, Franchisees had no further rights under the Franchise Agreement or applicable law with regard to the Franchise Agreement and, by ignoring the express terms for renewal set forth in the Franchise Agreement and GSI's attempts to have Franchisees execute all required documentation for renewal, Franchisees as a matter of law and effect chose not to renew the Franchise Agreement, but rather to let the Franchise Agreement expire.

67.     GSI further requests that the Court order the Franchisees to pay GSI its costs and reasonable attorneys' fees incurred in enforcing their respective obligations under the Franchise Agreement and the Assignment.

**WHEREFORE,** Plaintiff Goddard Systems, Inc. demands judgment in its favor and against Defendants Stephen A. Wortman, Carol A. Wortman, Noel L. Wortman, Kyung Nam-Wortman and School Equities, L.L.C., jointly and severally, as follows:

(a)     a declaratory judgment that: (1) Defendants have failed to comply with the requirements and discharge the conditions for renewal of the Franchise Agreement; (2) Defendants are in default of and have otherwise breached their obligations under the Franchise Agreement and the Assignment regarding renewal; and (3) GSI has a right to obtain and justice requires that Defendants be required to provide specific performance and, accordingly, Defendants are directed to immediately execute, notarize, date and return (as indicated) to GSI the renewal documents enclosed with

18

June 30, 2015 email and the Final Opportunity to Renew, and to otherwise cure and satisfy the itemized list of incomplete and missing items from Franchisees' renewal package as set forth in the June 30, 2015 e-mail and the Final Opportunity to Renew;

(b)     in the alternative, and at GSI's election, a declaratory judgment that: (1) Defendants failed to comply with the requirements for renewal of the Franchise Agreement; and (2) as of June 30, 2015, the Franchise Agreement expired, Defendants had no further rights under the Franchise Agreement or applicable law with regard to the Franchise Agreement, and by ignoring the express terms for renewal set forth in the Franchise Agreement and GSI's attempts to have Franchisees execute all required documentation for renewal, Defendants, as a matter of law and effect, chose not to renew the Franchise Agreement, but rather to let the Franchise Agreement expire;

(c)     Money damages attributable to the Franchisees' breaches of the Franchise Agreement and the Assignment in an amount to be determined at trial;

(d)     Compensatory damages in an amount to be determined at trial;

(e)     Exemplary damages in an amount to be determined at trial;

(f)     An accounting by Defendants of the profits to which GSI may be entitled;

(g)     Attorney's fees;

(h)     Costs of this action;

(i)     Pre-judgment and post-judgment interest; and

(j)     Such further relief as this Court deems appropriate.

19

Respectfully submitted,

**GODDARD SYSTEMS, INC.**

Dated: October 7, 2015          By:      Constantine T. Fournaris

Constantine T. Fournaris
James A. Goniea
PA Attorney ID Nos. 63902 and 207313
WIGGIN AND DANA LLP
50 S. 16th Street
Two Liberty Place, Suite 2925
Philadelphia, PA  19102
215-988-8311
cfournaris@wiggin.com

*Attorneys for Plaintiff Goddard Systems, Inc.*

20

15595/65/3328956.4

# Exhibit 1

170

## CAROUSEL SYSTEMS, INC.
## FRANCHISE AGREEMENT

THIS AGREEMENT, made and entered into this _____30_____ day of _Gune_, _2000_, between Carousel Systems, Inc., a Pennsylvania corporation, with its principal offices in King of Prussia, Pennsylvania 19406 hereinafter referred to as "Carousel"), and _____Stephen A. Wortman, Carol A. Wortman, Noel L. Wortman_____

____and Kyung Nam-Wortman_____(hereinafter referred to as "Franchisee").

### WITNESSETH:

WHEREAS, Carousel licenses a system (the "System") relating to the establishment, development and operation of pre-school early learning centers for children now known as The Goddard School ("Schools" or "School"). The System includes market analysis, procurement of students, sales and merchandising methods, training of Franchisee and center personnel, advertising techniques, record keeping and business management which may be changed, improved and further developed by Carousel from time to time;

WHEREAS, Carousel licenses the use of the trademark and service mark, "The Goddard School", and such other trade names, service marks, and trademarks as may hereinafter be designated as part of the System (the "Proprietary Marks"), and Carousel intends to develop, use and control such Proprietary Marks for the benefit and exclusive use of itself and its franchisees in order to identify for the public the source of services marketed thereunder and to represent the System's high standards of quality and service;

WHEREAS, Franchisee has applied to Carousel for a franchise to operate a School under the System and Proprietary Marks and to receive the training and other assistance provided by Carousel, and such application has been approved in reliance upon all of the representations made therein;

WHEREAS, Franchisee understands and acknowledges the importance of Carousel's high and uniform standards of quality and service and the necessity of operating the business franchised hereunder in conformity with Carousel's standards and specifications.

NOW, THEREFORE, the parties, in consideration of the undertakings and commitments of each party to the other party set forth herein, hereby mutually agree as follows:

### 1. APPOINTMENT

A.    Carousel hereby grants to Franchisee, upon the terms and conditions herein contained, the right and franchise to operate a School, and to use solely in connection therewith the System, as it may be changed, improved and further developed from time to time and the Proprietary Marks, at the following location (the "School"):

**400 Gill Lane, Iselin, New Jersey**

Franchisee accepts this grant and agrees to use his best efforts to develop the business potential of the School utilizing the System and the Proprietary Marks.

B.    Provided Franchisee is in compliance with this Agreement, Carousel will not during the term of this Agreement establish, nor license any other franchisee to establish, more than one (1) School under the System for each ten thousand (10,000) households in the County in which the School is located. Franchisee shall not relocate the School without prior written approval of Carousel.

C.    Except as provided herein, Franchisee expressly acknowledges and agrees that, this franchise is nonexclusive and that Carousel, its subsidiaries, affiliates or other franchisees or licensees of Carousel may compete with Franchisee for customers within and outside of the County described above.

### 2. TERM AND RENEWAL

A.    The term of this Agreement and franchise shall run for fifteen (15) years from the date of execution of this Agreement.

B.    Franchisee may, at its option, renew this franchise for additional periods of five (5) years each, provided that:

(1)    Franchisee has given Carousel written notice of election to renew not less than six (6) months nor more than twelve (12) months prior to the end of the initial or current renewal term, as the case may be;

(2)    Franchisee is not in default of any provision of this Agreement, any amendment hereof or any other Agreement between Franchisee and Carousel, or its subsidiaries and affiliates, and has substantially complied with all the terms and conditions of such agreements during the terms thereof;

(3)    Except as limited by applicable law, Franchisee must execute a general release in favor of Carousel and its officers, directors, shareholders and employees, in their corporate and individual capacities.

(4)    Franchisee agrees to execute upon renewal Carousel's then current form of Franchise Agreement, which agreement shall supersede in all respects this Agreement, and the terms of which may differ from the terms of this Agreement including without limitation, a higher percentage franchise fee and advertising contribution; provided, however, in no event shall an initial license or initial franchise fee be imposed upon any such renewal.

### 3. DUTIES OF CAROUSEL

A.    Carousel shall provide an initial training program to Franchisee, and shall make available such other training programs as it deems appropriate. All training shall be at such times and places as may be designated by Carousel.

NOT APPLICABLE    B.    ~~Carousel shall provide for the opening promotion and initial advertising of the School.~~

C.    Carousel shall provide such initial and continuing advisory assistance in the operation of the School as it deems appropriate.

D.    Carousel shall provide Franchisee with a set of specifications as to the types and quantities of supplies and equipment necessary for operation of the School and specifications for signs.

04/01/00

1

E.    Carousel shall provide Franchisee one copy of the Confidential Operating Manual, as more fully described in Paragraph 8 hereof.

F.    Carousel shall use its efforts to maintain high standards of quality, appearance, professionalism and service of the System, and to that end shall conduct, as it deems advisable, inspections of the School and evaluations of the teaching staff and personnel.

G.    Carousel shall administer the advertising funds paid hereunder in the manner prescribed by Paragraph 5B hereof.

4.    **FEES**

A.    Franchisee agrees to pay Carousel the following fees:

NOT APPLICABLE

(1)    An initial license fee of Fifty Thousand Dollars ($50,000.00) which, when paid to Carousel, shall be deemed fully earned and non-refundable except as noted herein. The initial license fee shall be due and payable upon the signing of this Agreement, less any deposits previously paid to Carousel.

*Five Thousand Dollars ($5,000.00)

(2)    A training and initial opening assistance fee of Twenty Thousand Dollars ($20,000.00) for Franchisee's initial training and for services related to the School opening programs. The training and initial assistance fee shall be due and payable upon the signing of this Agreement.

(3)    A continuing monthly franchise fee during the term of this Agreement in an amount equal to eight percent (8%) of the gross receipts of the School.

NOT APPLICABLE

B.    Franchisee shall deposit with Carousel a working capital deposit in an amount of Twenty Thousand Dollars ($20,000.00), payable upon the signing of this Agreement. Carousel shall deposit such amount in the Franchisee's checking account on the first day of the School's first week of business.

C.    All monthly franchise fees and continuing advertising contributions shall be payable monthly on the last day of each month on gross receipts for the preceding calendar month. In the event that franchise fees and advertising contributions are post-marked within three (3) days after the end of a calendar month and submitted with the monthly statements required by Carousel, the franchise fee payable to Carousel will be reduced to seven percent (7%) of gross receipts, provided that all monies due Carousel are paid and current as of the date of payment.

D.    If any payment to Carousel under this Agreement or any other agreement or account with Carousel or its affiliates or subsidiaries is overdue, Franchisee shall pay to Carousel or its affiliates or subsidiaries interest compounded monthly on such amount from the due date until paid at the maximum rate permitted by law (or, in the absence of such rate, a rate equal to one and one-half percent (1-1/2%) per month), provided that in no event shall the interest charged Franchisee hereunder exceed the maximum amount permitted by applicable of law. Entitlement to such interest shall be in addition to any other remedies Carousel or its affiliates or subsidiaries may have.

E.    "Gross receipts" as used herein shall mean the amount of all cash collected, or other consideration received, for all services or products of any nature rendered or sold at or from or as a result of the School.

5.    **ADVERTISING**

Recognizing the value of advertising, and the importance of the standardization of advertising programs to the furtherance of the goodwill and public image of the System, the parties agree as follows:

*One Thousand Eight Hundred Dollars ($1,800.00)

A.    Franchisee will pay to Carousel an initial advertising deposit ~~contribution~~ in the amount of Fifteen Thousand Dollars ($15,000.00) payable upon the signing of this Agreement, for the opening promotion and initial advertising of the School.

B.    Franchisee will pay to Carousel a continuing monthly advertising contribution in the amount of four percent (4%) of the gross receipts of the School but no less than Six Hundred Dollars ($600.00) per month for the creation and placement of advertising and promotional programs by Carousel for the benefit of the System. All monthly advertising contributions shall be payable at the same time as monthly franchise payments due under Paragraph 4A hereof. Franchisee hereby acknowledges Carousel's right to pay from the advertising funds collected all costs and expenses related to the formulation, development, production, media and all other costs of any such advertising and promotion (including without limitation, the proportionate compensation of employees of Carousel who devote time and render services in the conduct, formulation, development and production of such advertising and promotion programs or the administration of the funds used therefor). Franchisee acknowledges that increased cost of advertising, the needs of the business and other factors may necessitate an increase in the monthly advertising contribution. Franchisee shall be informed of the reasons for any increase in the monthly contribution. Carousel agrees that such administrative and creative costs will not be unreasonable or disproportionate. All monies will be spent in operator's local market. Carousel will provide an annual statement of receipts and disbursements with respect to advertising contributions payable hereunder upon written request by Franchisee.

C.    Carousel shall have the right to control all Yellow Page advertising and telephone listings and be the owner of and to receive the telephone number and listing for the School. Franchisee will be obligated to reimburse Carousel for all telephone bills paid by Carousel with respect to the telephone and telephone number used by the School upon receipt of an invoice from Carousel, or, at the request of Carousel, Franchisee shall pay the telephone bill directly immediately upon receipt thereof from Carousel or the telephone company. Carousel will place all Yellow Page advertising for Franchisee and other franchisees of the System. In addition to the payments under Paragraph 5B above, Franchisee will be obligated to pay to Carousel the annual costs of such Yellow Page advertising which will be billed to Franchisee. Franchisee agrees to remit all such payments on a monthly basis in addition to the payments referenced above. In the event that more than one (1) franchisee shares the Yellow Page advertising, the cost will be apportioned among all participating franchisees on an equal basis. If any payment to Carousel under this paragraph is past due, Carousel may require Franchisee to pay in full the annual cost of any Yellow Page advertising renewal upon demand by Carousel.

D.    Franchisee acknowledges the need to aggressively advertise and promote his or her business on a local basis. Accordingly, Franchisee agrees to use his or her best efforts to promote the business of the School through local advertising and promotion and agrees to expend such funds which may be necessary to accomplish this result.

E.    All advertising by Franchisee in any medium shall be conducted in a dignified manner and shall conform to the standards and requirements prescribed by Carousel. Franchisee shall submit to Carousel for its prior approval, samples of all advertising and promotional plans and materials that Franchisee desires to use and that have not been prepared or previously approved by Carousel.

6.    **DUTIES OF FRANCHISEE**

A.    Franchisee shall acquire or lease the location, at Franchisee's expense, and shall submit the lease or sale agreement, if any, prior to its execution to Carousel for its approval, which approval shall not be unreasonably withheld. The lease shall, among other things, provide that:

04/01/00

2

(1)    The premises shall only be used for the operation of the School;

(2)    Franchisee may not sublease or assign the lease or any part thereof except as a condition of the sale of the School in accordance with the terms of this Agreement;

(3)    Carousel shall have the right to enter the premises to inspect and make any modifications necessary to protect the Proprietary Marks; and

(4)    Carousel shall have the right, at Carousel's election to receive an assignment of the lease upon termination or expiration of this Agreement.

In addition, at the request of Carousel, Franchisee shall execute a collateral assignment of Franchisee's lease in the form prescribed by Carousel to secure Franchisee's obligations to Carousel under this Agreement.

B.    Franchisee shall develop the School in the manner prescribed by Carousel for The Goddard School and shall use in the operation of the School only those brands and types of equipment and supplies which meet Carousel's standards and specifications.

C.    Franchisee shall, prior to occupancy of the School, submit to Carousel a statement signed by Franchisee certifying that Franchisee has obtained all permits and certifications required for operation of the School, including, without limitation, all business or other licenses and satisfied all zoning, access, sign and fire requirements.

D.    Franchisee shall attend and complete to Carousel's satisfaction, an initial training program prescribed by Carousel. Carousel shall provide and pay only for training instructors, facilities, training materials, Franchisee's round trip transportation to and from the training site and lodging for the initial training program. (If there are two or more persons named as Franchisee in this Agreement, Carousel will pay round trip transportation and lodging to and from the training for a maximum of two (2) of these individuals). All other expenses incurred in such initial training, including, without limitation, the cost of food, shall be borne by Franchisee.

E.    Franchisee shall attend, at the request of Carousel, supplemental or refresher training programs, sales meetings, operations meetings, advertising meetings and conventions which may be offered by Carousel from time to time during the term of the franchise. All expenses incurred in connection with additional training programs, sales meetings, operations meetings, advertising meetings and conventions as Carousel may reasonably require including, without limitation, the cost of travel, room, board and wages, shall be borne by Franchisee, and Carousel shall provide and pay only for training instructors and materials.

F.    Franchisee shall implement a training program, at its sole expense, for employees of the School in accordance with training standards and procedures prescribed by Carousel from time to time. Franchisee shall maintain at all times during the term of the Franchise a staff of trained employees sufficient to operate the School in accordance with this Agreement. Franchisee agrees not to employ any person who is required to complete a training program but who fails or refuses to do so. Franchisee agrees to send its director and any replacement director to Carousel's Director Training Program and to pay Carousel the training fee then being charged.

G.    Franchisee shall maintain the School in the highest degree of sanitation, repair and condition, and shall perform such periodic repainting, repairs to impaired equipment and replacement of obsolete signs as Carousel may reasonably direct. At Carousel's request, which shall not be more often than once every five (5) years, Franchisee shall refurbish the School at its expense, to conform to Carousel's then-current public image, and shall make such structural changes, remodeling and redecorating and such modifications to existing improvements as may be necessary. Franchisee shall also purchase any additional equipment and replace any obsolete equipment as Carousel may direct at Franchisee's expense.

H.    Franchisee shall render prompt, professional, courteous and willing service to all customers and/or students of the School and agrees to handle all customer complaints promptly and courteously.

I.    Franchisee will offer all services that Carousel from time to time authorizes in writing for the School. Franchisee shall not offer any other services without Carousel's written consent.

J.    Franchisee shall make all payments required under this Agreement in the manner and at the time prescribed in this Agreement.

K.    Franchisee shall send Carousel a copy of all documents received from any federal, state or local agencies within 48 hours of receipt.

L.    Franchisee shall comply with all other requirements set forth in this Agreement.

## 7.    PROPRIETARY MARKS

A.    Franchisee's right to use the Proprietary Marks is derived solely from this Agreement and is limited to the conduct of business by Franchisee pursuant to and in compliance with this Agreement. Franchisee agrees that all usage of the Proprietary Marks and any goodwill established thereby shall inure to the exclusive benefit of Carousel. Franchisee acknowledges that this Agreement does not confer any goodwill or other interest in the Proprietary Marks upon Franchisee. Franchisee agrees to modify or discontinue use of any Proprietary Mark and/or use one or more additional or substitute Proprietary Marks, at any time, in the event Carousel determines in its sole discretion, that it is advisable to do so.

B.    Franchisee agrees that after termination or expiration of this Agreement he or she will not directly or indirectly at any time or in any manner identify himself or any business as a current or former The Goddard School or as otherwise associated with Carousel, or use in any manner or for any purpose the Proprietary Marks or any colorable imitation thereof.

C.    Franchisee agrees to operate, advertise and promote the School under the trade and service mark "The Goddard School", provided that Franchisee shall identify himself or herself as the owner and operator thereof in the manner prescribed by Carousel. Franchisee shall not use the Proprietary Marks as part of any corporate name or with any prefix, suffix or other modifying words, designs or symbols, or in any modified form, nor may Franchisee use the Proprietary Marks in connection with any unauthorized service in any manner not expressly authorized by Carousel. Franchisee agrees to prominently display the Proprietary Marks on all invoices, stationery and other forms and materials designated by Carousel, and in the manner prescribed by Carousel, and to obtain such fictitious or assumed name registrations as may be required under applicable law.

D.    Franchisee shall promptly notify Carousel of any use by any person or legal entity other than Carousel or another of its franchisees of any Proprietary Marks, any colorable variation thereof, or any other mark in which Carousel has or claims a proprietary interest. Franchisee further agrees to notify Carousel promptly of any litigation instituted by any person or legal entity against Carousel or Franchisee involving the Proprietary Marks. In the event Carousel, in its sole discretion, undertakes the defense or prosecution of any litigation relating to the Proprietary Marks, Franchisee agrees to execute any and all documents, and to render such assistance as may, in the opinion of Carousel's counsel, be reasonably necessary to carry out such defense or prosecution.

## 8.    CONFIDENTIAL OPERATING MANUAL

A.    In order to protect the reputation and goodwill of Carousel and to maintain uniform standards of operation under the Proprietary Marks, Franchisee shall operate the School in accordance with Franchisor's Confidential Operating Manual (the "Manual"), one copy of which will be supplied to Franchisee upon his arrival at training.

B.    Franchisee shall at all times treat the Manual, any other manuals created for or approved for use in the operation of the franchised business, and the information contained therein as confidential, and shall use all reasonable efforts to maintain such information as secret and confidential. Franchisee shall not at any time, without Carousel's prior written consent, copy, duplicate, record or otherwise reproduce the foregoing materials, in whole or in part, nor otherwise make the same available to any unauthorized person.

04/01/00

3

C.    The Manual shall at all times remain the sole property of Carousel.

D.    Carousel may from time to time revise the contents of the Manual and Franchisee expressly agrees to comply with each new or changed standard; provided, however, that any such revision or modification shall not materially change or alter the fundamentals of the System. The provisions of the Manual as modified from time to time shall constitute provisions of this Agreement as if fully set forth herein. All references herein to this Agreement shall include the provisions of the Manual.

## 9.    CONFIDENTIAL INFORMATION

Franchisee shall not, during the term of this Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, association or corporation, any trade secrets or confidential information, knowledge, or know-how concerning the methods of operation of a School which may be communicated or disclosed to Franchisee, or of which Franchisee may be apprised, by virtue of Franchisee's operation under the terms of this Agreement. Franchisee shall divulge such trade secrets and confidential information only to such of its employees as must have access to it in order to operate the School.

## 10.    ACCOUNTING AND RECORDS

A.    During the term of this Agreement, Franchisee shall maintain and preserve, for at least six (6) years from the dates of their preparation, full complete and accurate books, records and accounts in accordance with generally accepted accounting principles and in the form and manner prescribed by Carousel from time to time.

B.    Franchisee shall submit to Carousel, no later than Friday of each week during the term of this Agreement, a signed statement in the form prescribed by Carousel, accurately reflecting all gross receipts during the preceding week and such other data or information as Carousel may require.

C.    Franchisee shall, at its expense, submit to Carousel by the twentieth (20th) day of each month, an unaudited profit and loss statement for the preceding month and the year-to-date. Upon Carousel's request, Franchisee shall, at its expense, submit to Carousel an audited profit and loss statement and balance sheet for any calendar or fiscal year during the term hereof.

D.    Franchisee shall submit to Carousel, for review or auditing, such other forms, reports, records, information and data as Carousel may reasonably request, including the School's income tax returns.

E.    Carousel or its designated agents shall have the right at all reasonable times to examine, at its expense, the books, records and tax returns of Franchisee. Carousel shall also have the right, at any time, to have an independent audit made of the books of Franchisee. If any inspection or audit should reveal that any payments due Carousel have been understated in any report to Carousel, then Franchisee shall immediately pay to Carousel or its affiliates or subsidiaries the amount understated upon demand, in addition to interest from the date such amount was due until paid, at the rate specified in Paragraph 4D hereof. Additionally, if any inspection or audit should reveal that any payments due Carousel have been understated in any report to Carousel or if Franchisee fails to produce all books and records to be audited at the time specified by Carousel, Franchisee shall reimburse Carousel for any and all costs and expenses connected with the inspection, any reinspection or with the audit (including, without limitation, the charges of any independent accountant, attorneys' fees and travel expenses, room, board and compensation of Carousel employees). The foregoing remedies shall be in addition to any other remedies Carousel may have.

## 11.    INSURANCE

A.    Franchisee must purchase and at all times during the terms of this Agreement shall maintain in full force and effect policies of insurance designated by Carousel including: (i) Workers' Compensation and Employers' Liability in amounts prescribed by law; (ii) Automobile Liability for owned, non-owned and hired vehicles at an amount not less than $1,000,000 Combined Single Limit; (iii) Comprehensive General Liability including the following extensions:

  (1)    Sexual Abuse & Molestation Liability;

  (2)    Teachers Professional Liability;

  (3)    Corporal Punishment Liability; and

  (4)    Premise Medical Expense in a limit not less than $1,000; and

and (iv) such additional insurance as may be required by the terms of any lease for the premises of the School.

Liability insurance is to be written on an occurrence basis, utilizing a combined single limit per occurrence for bodily injury, personal injury and property damage of at least $1,000,000 per occurrence/$2,000,000 aggregate (except as prescribed by law or availability for the above).

In addition to the above, the individual/Franchisee must obtain an umbrella excess liability policy in the amount not less than ten million dollars ($10,000,000) per occurrence and $10,000,000 per aggregate. This coverage is to extend over the policy coverages identified in this paragraph 11A.

Also required, is Accident and Health for the Children in an amount not less than $10,000 Accident Death; $20,000 Accidental Dismemberment; $15,000 Accident Medical Excess Coverage with the First $100 primary and $500 Dental Coverage.

B.    All policies of insurance shall be in form and in such amounts as Carousel shall reasonably determine with companies having a rating of A8 or better as determined by A.M. Best and Co. or comparable rating by another nationally recognized rating organization. All Companies must be licensed in the state the School is located and must be acceptable to Carousel.

The policies shall protect, as named insureds, Franchisee, Carousel and any other party designated by Carousel. All such policies shall contain an endorsement which provides that only actual notice to insured, if an individual, or to any executive officer of insured, if a corporation, shall constitute knowledge of the insured.

Franchisee shall furnish Carousel, any other named insured and all other persons designated by Carousel, certificates issued by each of Franchisee's insurers indicating that all required insurance is in full force and effect and will not be terminated or changed without at least thirty (30) days prior written notice to Carousel of each such policy. Within five (5) days of any request by Carousel, Franchisee shall deliver a copy of all such insurance policies to Carousel for examination.

C.    Should Franchisee, for any reason, fail to procure or maintain the insurance required by this Agreement, as revised from time to time for all franchisees, Carousel shall have the right and authority (without, however, any obligation to do so), to procure such insurance and to charge same to Franchisee, which charges, together with a reasonable fee for Carousel's expenses in so acting, shall be payable by Franchisee immediately upon notice.

D.    Franchisee's obligation to obtain and maintain the foregoing policy or policies in the amounts specified shall not be limited in any way by reason of any insurance which may be maintained by Carousel, nor shall Franchisee's performance of that obligation relieve it of liability under the indemnity provisions set forth in Paragraph 18 of this Agreement.

## 12.    TRANSFERABILITY OF INTEREST

A.    Carousel shall have the right to transfer or assign all or any part of its rights or obligations herein to any other person or legal entity.

B.    Franchisee understands and acknowledges that the rights and duties set forth in the Agreement are personal to Franchisee. Accordingly, Franchisee shall not sell, assign, transfer, convey, give away, pledge, mortgage or otherwise encumber any interest in this franchise or in Franchisee or in the assets of the franchise without the prior written consent of Carousel. Any purported assignment or transfer, by operation of law or otherwise, not having the written consent of Carousel shall be null and void and shall constitute a material breach of this Agreement. Carousel shall not unreasonably withhold its consent to transfer of any interest in the franchise or Franchisee, provided, however, that prior to the time of transfer, Franchisor may, in its sole discretion, except in the case of a transfer to a corporation formed solely for the convenience of ownership, require that:

04/01/00         4

(1)   All of Franchisee's accrued monetary obligations to Carousel and all other outstanding obligations related to the School shall have been satisfied;

(2)   The transferor and its owners shall have executed a general release under seal, in a form satisfactory to Carousel, of any and all claims against Carousel and its officers, directors, shareholders and employees, in their corporate and individual capacities;

(3)   The transferee has entered into a written assignment in a form satisfactory to Carousel, assuming and agreeing to discharge all of Franchisee's obligations under the Franchise Agreement, or, at the option of Carousel, the transferee agrees to enter into Carousel's then current form of Franchise Agreement;

(4)   The transferee and its owners shall demonstrate to Carousel's satisfaction that he or she meets Carousel's educational, managerial and business standards; possesses a good moral character, business reputation and credit rating; has the aptitude and ability to conduct the business of the School; and has adequate financial resources and capital to operate the School;

(5)   The transferee and its owners have satisfied all licensing and other requirements under applicable state law;

(6)   The transferee shall pay Carousel a Ten Thousand Dollar ($10,000.00) training and initial assistance fee and shall complete the initial training program then in effect for franchisees. Carousel shall have the right to increase the amount of such training and initial assistance fee ten percent (10%) per year from the date of this Agreement to the date of any such transfer;

(7)   The transferor shall pay Carousel a transfer fee of One Thousand Dollars ($1,000.00) to cover administrative and other expenses in connection with the transfer;

(8)   The transferee shall pay Carousel an initial advertising deposit of Two Thousand Five Hundred Dollars ($2,500.00)

(9)   In the event that Carousel produces the transferee, Franchisee shall pay Carousel a sales commission in the amount of seven percent (7%) of the gross sale price of the School (an existing franchisee or an Applicant under a Preliminary Agreement who becomes a transferee shall be considered to be produced by Carousel; and

(10)  Transferor and transferee shall execute such other documents as may be reasonably required by Carousel.

C.   In the event the proposed transfer is to a corporation formed solely for the convenience of ownership, Carousel's consent to such transfer may, in its sole discretion, be conditioned on the following requirements:

(1)   The corporate Franchisee shall be newly organized and its charter shall provide that its activities are confined exclusively to the operation of the School;

(2)   Franchisee shall own a majority interest in the transferee corporation, shall not diminish his or her proportionate ownership interest in the transferee franchisee, except as may be required by law, and shall act as its principal executive officer;

(3)   Each stock certificate of the corporate franchisee shall have conspicuously endorsed upon its face a statement in a form satisfactory to Carousel that it is held subject to, and that further assignment or transfer thereof is subject to, all restrictions imposed upon assignment by this Agreement;

(4)   All shareholders of such corporation shall execute an agreement in the form prescribed by Carousel guaranteeing such corporation's obligations under this Agreement and agreeing to be bound jointly and severally by all provisions hereof;

(5)   The transferee corporation shall agree to be bound by all of the provisions of this Agreement and to assume and discharge all of Franchisee's obligations hereunder; and

(6)   The transferee corporation and its owners have satisfied the licensing and other requirements under applicable state law.

D.   In the event of a proposed transfer, Franchisee agrees that Carousel shall have the right to make available to the transferee its complete file of Franchisee.

E.   If Franchisee is a corporation, the articles of incorporation, by-laws and other organizational documents shall recite that the issuance and transfer of any securities is restricted by the terms of Paragraph 12 hereof and each stock certificate shall have conspicuously endorsed upon its face a statement in a form satisfactory to Carousel that it is held subject to, and that further assignment or transfer thereof is subject to, all restrictions imposed upon assignment by this Agreement.

F.   Upon the death or permanent incapacity of any person with an interest in this franchise or in Franchisee, and upon the dissolution of a Franchisee that is a partnership or corporation, the executor, administrator, personal representative or trustee of such person or entity shall transfer his or its interest to a third party approved by Carousel within a reasonable time. Such transfers, including, without limitation, transfers by devise or inheritance, shall be subject to the same conditions as any lifetime transfer. If the heirs or beneficiaries of any such person are unable to meet the conditions set forth in this Paragraph 12, the executor, administrator, personal representative or trustee of the deceased or incapacitated franchisee shall have a reasonable time to dispose of the deceased's or incapacitated person's interest in the franchise, which disposition shall be subject to all the terms and conditions for transfers contained in the Agreement.

G.   Carousel's consent to a transfer of any interest in the franchise granted herein shall not constitute a waiver of any claims it may have against the transferring party, nor shall it be deemed a waiver of Carousel's right to demand exact compliance with any of the terms of this Agreement by the transferee.

## 13.   TERMINATIONS BY CAROUSEL

A.   Carousel may terminate this Agreement and the franchise upon delivery of notice of termination to Franchisee upon the occurrence of any of the following events:

(1)   Franchisee becomes insolvent, makes a general assignment for the benefit of creditors, is adjudicated a bankrupt, suffers temporary or permanent court appointed receivership of substantially all of its property or suffers the filing of a voluntary or involuntary bankruptcy petition which is not dismissed within thirty (30) days after filing;

(2)   Franchisee abandons or ceases to do business at the School, or loses the right to possession of the School or otherwise forfeits the right to do or transact business in the jurisdiction where the School is located; however, if any loss of possession results from the governmental exercise of the power of eminent domain, or if, through no fault of Franchisee, the School is damaged or destroyed by a disaster such that it cannot, in Carousel's judgment, reasonably be restored, then in either such event this Agreement shall not be terminated for that reason for ninety (90) days thereafter, provided Franchisee applies within that time for approval to relocate the School, for the remainder of the term hereof, which approval shall not be unreasonably withheld;

(3)   Final conviction of Franchisee or any of its owners of a felony or Franchisee or any of its owners engages in conduct which, in the judgment of Carousel, has or may affect the goodwill of the Proprietary Marks;

(4)   If Franchisee or any of its owners purports to transfer any rights or obligations under this Agreement to any third party without Franchisor's prior written consent, contrary to the terms of Paragraph 12 of this Agreement;

(5)   If Franchisee or any of its owners fails to comply with the covenants contained in Paragraph 16 hereof;

(6)   If Franchisee discloses or divulges the contents of the Manual or other trade secret or confidential information provided Franchisee by Carousel contrary to Paragraphs 8 and 9 hereof;

04/01/00                                                  5

(7)    If an approved transfer is not effected within a reasonable time following Franchisee's or an owner's death or permanent incapacity as required by Paragraph 12F hereof;

(8)    If a threat or danger to public health or safety results from the maintenance or operation of the School;

(9)    If Carousel discovers that Franchisee or any of its owners have made any material misrepresentation on or in connection with his application for the franchise;

(10)    If Franchisee fails on two (2) or more occasions within any one (1) year period to comply with any one or more provisions of this Agreement, whether or not such failures to comply are corrected after notice thereof is delivered to Franchisee.

B.    Carousel shall have the further right to terminate this Agreement and the franchise effective upon delivery of notice to Franchisee, if Franchisee fails to comply with any other provision of this Agreement or any specification, standard, operating procedure or Quality Assurance prescribed by Carousel and does not correct such failure within seven (7) days if such failure relates to the use of the Proprietary Marks, fifteen (15) days if such failure relates to the payment of money by Franchisee pursuant to this Agreement or any other agreement between Franchisee and Carousel or its subsidiaries or affiliates, otherwise within thirty (30) days, after written notice of such failure to comply (which shall describe the action that Franchisee must take to correct same) is given to Franchisee.

## 14.    OBLIGATIONS UPON TERMINATION OR EXPIRATION

Upon termination or expiration of this Agreement:

A.    Franchisee shall immediately cease to operate the business franchised under this Agreement, and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former franchisee of Carousel.

B.    Franchisee shall immediately and permanently cease to use, by advertising or in any manner whatsoever, any equipment, confidential methods, procedures and techniques associated with the System; the trade and service mark "The Goddard School", and any Proprietary Marks and distinctive forms, slogans, signs, symbols, or device associated with the System. In particular, Franchisee shall cease to use, without limitation, all signs, equipment, advertising materials, stationery, forms and any other articles which display the Proprietary Marks associated with the System.

C.    Franchisee shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the name "The Goddard School" or any other service mark or trademark of Carousel.

D.    Franchisee shall make such modifications or alterations to the premises operated hereunder (including without limitation, ceasing all use of the telephone number) immediately upon termination or expiration of this Agreement as may be necessary to prevent the operation of any business thereon by himself or others in derogation of this Paragraph 14 and shall make such specific additional changes thereof as Carousel may reasonably request for that purpose. In the event Franchisee fails to make such modifications, Carousel shall have the right to re-enter the premises and make such modifications or alterations to the premises.

E.    Franchisee shall promptly pay all sums owing to Carousel and its subsidiaries and affiliates.

F.    Franchisee shall immediately turn over to Carousel all manuals, including the Manual, records, files, instructions, correspondence, all materials related to operating the franchised business including, without limitation, brochures, agreements and any and all other materials relating to the operation of the School in Franchisee's possession.

G.    Franchisee shall comply with the covenants contained in Paragraph 16 of this Agreement.

H.    Except as limited by applicable law, Franchisee shall execute a general release under seal, in a form satisfactory to Carousel, of any and all claims against Carousel and its officers, directors, shareholders and employees, in their corporate and individual capacities.

## 15.    OPTION TO PURCHASE

A.    Upon termination or expiration of this Agreement, Carousel shall have the right for a period of sixty (60) days commencing on the date of termination or expiration to purchase from Franchisee the assets of the School and obtain an assignment of Franchisee's lease for the premises of the School.

B.    The purchase price for the assets of the School shall be their fair market value exclusive of any goodwill, provided that Carousel may exclude from the purchased assets, any fixtures, equipment, signs, products or supplies that it has not theretofore approved as meeting quality or performance standards for Schools. If Carousel and Franchisee are unable to agree on the fair market value, the fair market value shall be determined by an independent appraiser selected by Carousel.

C.    The purchase price shall be paid in cash at the closing of the purchase, which shall take place no later than sixty (60) days after receipt by Franchisee of Carousel's notice of exercise of this option to purchase the Franchise, at which time Franchisee shall deliver instruments transferring to Carousel or its assignee: (1) good and merchantable title to the assets purchased, free and clear of all liens and encumbrances with all sales and other transfer taxes paid by Franchisee; and (2) all licenses or permits which may be assigned or transferred. Carousel shall have the right to set off against and reduce the purchase price by any and all amounts owed by Franchisee to Carousel.

## 16.    COVENANTS

A.    Franchisee covenants that, during the term of this Agreement, Franchisee and its owners shall devote full time, energy and efforts to the management and operation of the School to satisfy and honor their obligations under this Agreement. The School shall at all times be under the operation of Franchisee or a qualified director whose identity shall at all times be disclosed to Carousel.

B.    Franchisee covenants that during the term of this Agreement, except as otherwise approved in writing by Carousel, Franchisee shall not directly or indirectly, for himself, or through, on behalf of, or in conjunction with any person, persons, partnership or corporation:

(1)    Divert or attempt to divert any business or customer of the business franchised hereunder to any competitor, by direct or indirect inducement or otherwise, to do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System.

(2)    Employ or seek to employ any person who is at that time employed by Carousel or by any other franchisee of Carousel, or otherwise directly or indirectly to induce such person to leave his or her employment thereat.

(3)    Own, maintain, engage in, be employed by, lease real estate to, finance, or have any interest in any other child day care or pre-school learning center or business.

C.    Franchisee covenants that for a period of three (3) years after the expiration or termination of this Agreement, regardless of the cause of termination, or the date upon which Franchisee ceases to operate the business franchised hereunder following termination or expiration of this Agreement, whichever is later, Franchisee shall not either directly or indirectly, for himself or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation:

(1)    Do or engage in any act prescribed by Paragraph 16B (1) and (2) of this Agreement, which are hereby incorporated by reference as if more fully set forth herein.

(2)    Own, maintain, engage in, be employed by, lease real estate to, finance, or have any interest in any child day care or pre-school learning center or business at the premises of the School or within a radius of ten (10) miles of the School or within a 10 mile radius of any existing or proposed Goddard location.

D.    Franchisee understands and acknowledges that Carousel shall have the right, in its sole discretion, to reduce the scope of any covenant set forth in Paragraphs 16.B. and C., in this Agreement, or any portion thereof, without Franchisee's consent, effective immediately upon receipt by Franchisee of written notice thereof, and Franchisee agrees that it shall comply forthwith with any covenant as so modified, which shall be fully enforceable notwithstanding the provisions of Paragraph 22 hereof.

E.    If any court or other tribunal having jurisdiction to determine the validity or enforceability of this Paragraph 16 determines that it would be invalid or unenforceable as written, then the provisions heretofore shall be deemed to be modified to such extent or in such manner as necessary for such provisions to be valid and enforceable to the greatest extent possible.

F.    The provisions of this Paragraph 16 shall not apply to the operation by Franchisee of any other franchise which may be granted by Carousel to Franchisee; or the ownership by Franchisee of less than a five percent (5%) beneficial interest of the outstanding equity securities in any publicly held corporation.

## 17.    TAXES, PERMITS AND INDEBTEDNESS

A.    Franchisee shall promptly pay when due all taxes levied or assessed by any federal, state or local tax authority, and any and all indebtedness incurred by Franchisee in the conduct of the business franchised hereunder.

B.    Franchisee shall comply with all federal, state and local laws, rules and regulations, and shall timely obtain any and all permits, certificates or licenses necessary for the full and proper conduct of the business franchised hereunder, including, without limitation, licenses to do business, fictitious name registrations and sales tax permit clearance.

C.    Franchisee shall notify Carousel in writing within five (5) days of the commencement of any action, suit or proceeding, and of the issuance of any order, writ, injunction, award or decree of any court, agency or other governmental instrumentality, which may adversely affect the operation or financial condition of the franchised business.

## 18.    INDEPENDENT CONTRACTOR AND INDEMNIFICATION

A.    It is understood and agreed by the parties hereto that this Agreement does not create a fiduciary relationship between them, that Franchisee shall be an independent contractor, and that nothing in this Agreement is intended to constitute either party an agent, legal representative, subsidiary, joint venturer, partner, employee or servant of the other for any purpose whatsoever.

B.    During the term of this Agreement and any extensions hereof, Franchisee expressly agrees to hold itself out to the public as an independent contractor operating the business pursuant to a franchise from Carousel. Franchisee agrees to take such affirmative action as may be necessary to do so, including without limitation, exhibiting a notice of that fact in a conspicuous place in the franchised premises, the content of which Carousel reserves the right to specify.

C.    It is understood and agreed that nothing in this Agreement authorizes Franchisee to make any contract, agreement, warranty or representation on Carousel's behalf, or to incur any debt or other obligation in Carousel's name, and that Carousel shall in no event assume liability for, or be deemed liable hereunder as a result of, any such action, or by reason of any act or omission of Franchisee in its conduct of the franchised business or any claim or judgment arising therefrom against Carousel. Franchisee shall indemnify and hold Carousel harmless against any and all such claims arising directly or indirectly from, as a result of, or in connection with Franchisee's operation of the franchised business, as well as the cost, including attorney's fees, of defending against them.

## 19.    APPROVALS AND WAIVERS

A.    Whenever this Agreement requires the prior approval or consent of Carousel, Franchisee shall make a timely written request to Carousel therefor, and such approval or consent shall be obtained in writing.

B.    Carousel makes no warranties or guarantees upon which Franchisee may rely, and assumes no liability or obligation to Franchisee, by providing any waiver, approval, consent or suggestion to Franchisee in connection with this Agreement, or by reason of any neglect, delay or denial of any request therefor.

C.    No failure of Carousel to exercise any power reserved to it by this Agreement, or to insist upon strict compliance by Franchisee with any obligation or condition hereunder, and no custom or practice of the parties at variance with the terms hereof, shall constitute a waiver of Carousel's right to demand exact compliance with any of the terms herein. Subsequent acceptance by Carousel of any payments due to it hereunder shall not be deemed to be a waiver by Carousel of any preceding breach by Franchisee of any terms, covenants or conditions of this Agreement.

## 20.    NOTICES

Any and all notice required or permitted under this Agreement shall be in writing and shall be personally delivered or mailed by registered or certified mail to the respective parties at the following addresses unless and until a different address has been designated by written notice to the other party:

Notice to Carousel:

Carousel Systems, Inc.
381 Brooks Road
King of Prussia, PA 19406

Notice to Franchisee:

**Stephen A. Wortman & Carol A. Wortman**
**Noel L. Wortman &**
**Kyung Nam-Wortman**
**400 Gill Lane**
**Iselin, New Jersey**

Any notice by certified or registered mail shall be deemed to have been given at the date and time of mailing.

## 21.    ENTIRE AGREEMENT

This Agreement, the documents referred to herein, and the Attachments hereto, if any, constitute the entire, full and complete Agreement between Carousel and Franchisee concerning the subject matter hereof, and supersede all prior agreements, no other representations having induced Franchisee to execute this Agreement. No representations, inducements, promises or agreements, oral or otherwise, not embodied herein or attached hereto (unless of subsequent date) were made by either party, and none shall be of any force or effect with reference to this Agreement or otherwise. No amendment, change or variance from this Agreement shall be binding on either party unless mutually agreed to by the parties and executed by their authorized officers or agents in writing.

04/01/00

7

## 22. SEVERABILITY AND CONSTRUCTION

A.    Except as expressly provided to the contrary herein, each section, part, term and/or provision of this Agreement shall be considered severable; and if, for any reason, any section, part, term and/or provision herein is determined to be invalid and contrary to, or in conflict with, any existing or future law or regulation by a court or agency having valid jurisdiction, such shall not impair the operation of, or have any other effect upon, such other portions, sections, parts, terms and/or provisions of this Agreement as may remain otherwise intelligible, and the latter shall continue to be given full force and effect and bind the parties hereto; and said invalid sections, parts, terms and/or provisions shall be deemed not to be part of this Agreement.

B.    If any applicable law or rule of any jurisdiction requires a greater prior notice of the termination of, or election not to renew this Agreement, or the taking of some other action with respect to such termination or election not to renew than is required hereunder, the prior notice or other action required by such law or rule shall be substituted for the notice or other requirements hereof.

C.    Anything to the contrary herein notwithstanding, nothing in this Agreement is intended, nor shall be deemed, to confer upon any person or legal entity other than Carousel or Franchisee and such of their respective successors and assigns as may be contemplated by Paragraph 12 hereof, any rights or remedies under or by reason of the Agreement.

D.    All captions in the Agreement are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provision hereof.

E.    All references herein to gender and number shall be construed to include such other gender and number as the context may require, and all acknowledgments, promises, covenants, agreements and obligations herein made or undertaken by Franchisee shall be deemed jointly and severally undertaken by all parties hereto on behalf of Franchisee.

F.    This Agreement may be executed in counterparts, and each copy so executed shall be deemed an original.

## 23. ENFORCEMENT

A.    This Agreement takes effect upon its acceptance and execution by Carousel in Pennsylvania. This Agreement shall be interpreted and construed under the laws of the Commonwealth of Pennsylvania and any dispute between the parties shall be governed by and determined in accordance with the substantive law of the Commonwealth of Pennsylvania, which laws shall prevail in the event of any conflict of law.

B.    Franchisee acknowledges that he has and will continue to develop a substantial and continuing relationship with Carousel at its principal offices in the Commonwealth of Pennsylvania, where Carousel's decision-making authority is vested and franchise operations are conducted and supervised. Therefore, any action arising out of or relating to this Agreement shall be commenced, litigated and conducted only in a state or federal court of general jurisdiction in the Commonwealth of Pennsylvania. Franchisee irrevocably submits to the jurisdiction of such court and irrevocably waives any objection he may have to either the jurisdiction or venue of such court. Franchisee further agrees not to argue that Pennsylvania is an inconvenient forum or to request transfer of any such action to any court other than those in the Commonwealth of Pennsylvania.

C.    No right or remedy conferred upon or reserved to Carousel or Franchisee by this Agreement is intended to be, nor shall be deemed, exclusive of any other right or remedy herein or by law or equity provided or permitted, but each shall be cumulative of every other right or remedy.

D.    Nothing herein contained shall bar Carousel's right to obtain injunctive relief against threatened conduct that will cause it loss or damages, under the usual equity rules, including the applicable rules for obtaining restraining orders and preliminary injunctions.

E.    If Carousel shall institute any action at law or in equity against Franchisee to secure or protect its rights hereunder or to enforce the terms of this Agreement, Carousel shall be entitled to recover, in addition to any judgment rendered in its favor, reasonable attorney's fees together with court costs and expenses of litigation.

FRANCHISEE HAS READ THE ABOVE FRANCHISE AGREEMENT AND UNDERSTANDS ITS TERMS. FRANCHISEE WOULD NOT SIGN THIS FRANCHISE AGREEMENT IF FRANCHISEE DID NOT UNDERSTAND AND AGREE TO BE BOUND BY ITS TERMS.

IN WITNESS WHEREOF, the parties hereto have duly executed, sealed and delivered this Agreement on this ____30____ day of ____June____, 2010.

CAROUSEL SYSTEMS, INC.

By: _____
WILLIAM D. McKAIG
Secretary/Treasurer

FRANCHISEE    (SEAL)
Stephen A. Wortman

FRANCHISEE    (SEAL)
Carol A. Wortman

FRANCHISEE    (SEAL)
Noel L. Wortman

FRANCHISEE    (SEAL)
Kyung Nam-Wortman

04/01/00                                    8

# CAROUSEL SYSTEMS, INC.
## AMENDMENT TO THE FRANCHISE AGREEMENT
## (TRANSFER)

THIS AMENDMENT TO THE FRANCHISE AGREEMENT ("Amendment") is made and entered into this _30_ day of ____June____, 2000, by and between **Carousel Systems, Inc.**, a Pennsylvania corporation, with its principal offices in King of Prussia, Pennsylvania ("Carousel"), and **Stephen A. Wortman, Carol A. Wortman, Noel L. Wortman and Kyung Nam-Wortman** (collectively "Franchisee").

### WITNESSETH:

WHEREAS, Franchisee has signed a Franchise Agreement dated ___June 30___, 2000 (the "Franchise Agreement") with Carousel related to the establishment, development, and operation of a The Goddard School at 400 Gill Lane, Iseline, New Jersey (the "School");

WHEREAS, the School was established and operated by an existing franchisee ("Existing Franchisee");

WHEREAS, Existing Franchisee and Franchisee have entered into a Contract For Sale of Business dated April 29, 2000 ("Contract For Sale") by which Existing Franchisee agreed to convey to Franchisee the assets of the School;

WHEREAS, the Contract For Sale provides that the closing date for such conveyance is June 30, 2000.

NOW, THEREFORE, the parties, in consideration of the undertakings and commitments of each party to the other party set forth herein, hereby mutually agree as follows:

1.    The following Paragraph 6M shall be added to the Franchise Agreement:

     M.    Franchisee shall take possession and begin operation of the School no later than July 14, 2000; provided, however, that Carousel, shall have the right, but without any obligation, in Carousel's sole and absolute discretion, to extend such date in writing.

2.  The following Paragraph 13A(11) shall be added to the Franchise Agreement:

(11)  If Franchisee fails to begin operation of the School by July 14, 2000, or such later date as Carousel, in its sole and absolute discretion, specifies in writing.

3.  This Amendment and the documents referred to herein (including attachments thereto) constitute the entire, full and complete agreement between Carousel and Franchisee concerning the subject matter hereof, and supersede all prior agreements, no other representations having induced Franchisee to execute this Amendment. No representations, inducements, promises or agreements, oral or otherwise, not embodied herein or attached hereto (unless of subsequent date) were made by either party, and none shall be of any force and effect with reference to this Amendment or otherwise. No amendment, change or variance from this Amendment shall be binding on either party unless agreed to by the parties and executed by their officers or agents in writing. Except as otherwise described herein, all other terms and conditions in the Franchise Agreement are hereby ratified and confirmed. In the event of any conflict between the terms of this Amendment and the Franchise Agreement, the terms of this Amendment shall control.

IN WITNESS WHEREOF, the undersigned have affixed their signatures hereto as of the day and date first written above.

FRANCHISEE

Stephen A. Wortman          (Seal)

Carol A. Wortman          (Seal)

Noel L. Wortman          (Seal)

Kyung Nam-Wortman          (Seal)

Carousel Systems, Inc..

By: _____
William D. McKaig, Secretary/Treasurer

# Exhibit 2

170

#

## CAROUSEL SYSTEMS, INC.

## ASSIGNMENT AND ASSUMPTION AGREEMENT
### (LIMITED LIABILITY COMPANY)

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement") is made and entered into this _30_ day of ___June___, 2000, by and among **CAROUSEL SYSTEMS, INC.**, a Pennsylvania corporation, with its principal offices at 381 Brooks Road, King of Prussia, Pennsylvania, 19406 ("Carousel") and **Stephen A. Wortman and Carol A. Wortman**, husband and wife, and **Noel L. Wortman and Kyung Nam-Wortman**, husband and wife, all residents and citizens of the State of New Jersey ("Assignor") and **School Equities, L.L.C.** ("Assignee"), a New Jersey Limited Liability Company owned and controlled by Stephen A. Wortman, Carol A. Wortman, Noel L. Wortman and Kyung Nam-Wortman.

### BACKGROUND

A.   Assignor and Carousel entered into a certain Franchise Agreement dated _June 30 2000_ (the "Franchise Agreement") whereby Assignor was given the right and undertook the obligation to operate a The Goddard School at 400 Gill Lane, Iselin, New Jersey (the "School").

B.   Assignor has organized Assignee for the convenience and purpose of owning and operating the School.

C.   Assignor desires to assign its rights and obligations under the Franchise Agreement to Assignee pursuant to and in accordance with the provisions of the Franchise Agreement.

D.   Carousel is willing to consent to the assignment of the Franchise Agreement to Assignee, subject to the terms and conditions of this Agreement, including without limitation, Assignor's agreement to guarantee the performance by Assignee of its obligations under the Franchise Agreement and to continue to be bound by all of the provisions of the Franchise Agreement.

### AGREEMENT

In consideration of the mutual covenants contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged, and intending to be legally bound, the parties agree as follows:

1.   Assignor hereby assigns and transfers over to Assignee all of its right, title and interest in and to the Franchise Agreement, effective as of the date hereof.

2.   Assignee hereby assumes all of Assignor's obligations, agreements, commitments, duties and liabilities under the Franchise Agreement, and agrees to be bound by and observe and faithfully perform all of the obligations, agreements, commitments and duties of the Franchisee thereunder with the same force and effect as if the Franchise Agreement were originally written with Assignee as Franchisee.

3.   Assignor agrees that it shall continue to be bound by all of the terms and conditions of the Franchise Agreement, including without limitation, the provisions contained in paragraphs 12 and

Carousel Assign Assumpt Agreement (Corp) Wortman2/Carousel

16 thereof, and that nothing contained herein shall be deemed to relieve it of any of its obligations contained in the Franchise Agreement. Assignor further agrees to, and by this instrument do hereby, guarantee the performance by Assignee of all of its obligations, commitments, duties and liabilities under the Franchise Agreement. Without limiting the foregoing, Assignor irrevocably and unconditionally guarantees to Carousel: (i) that Assignee will pay all amounts to be paid and otherwise comply with all provisions of the Franchise Agreement or any other agreement with Carousel or its affiliates concerning the operation of the School; and (ii) that if Assignee defaults in making any such payments or complying with any such provisions, Assignor shall pay forthwith upon demand all amounts due and owing Carousel and all damages that may arise as a result of any such non-compliance.

4.      In the enforcement of any of its rights against Assignor, Carousel may proceed as if Assignor was the primary obligor under the Franchise Agreement. Assignor waives any right to require Carousel to first proceed against Assignee or to proceed against or exhaust any security (if any) held by Carousel or to pursue any other remedy available to it before proceeding against Assignor. No dealings between Carousel and Assignee shall exonerate, release, discharge or in any way reduce the obligations of Assignor hereunder, in whole or in part and in particular and without limiting the generality of the foregoing, Carousel may modify or amend the Franchise Agreement, grant any indulgence, release, postponement or extension of time, waive any term or condition of the Franchise Agreement, or any obligation of Assignee, take or release any securities or other guarantees for the performance by Assignee of any of its obligations, and otherwise deal with Assignee as Carousel may see fit without affecting, lessening or limiting in any way the liability of Assignor. Notwithstanding any assignment for the general benefit of creditors or any bankruptcy or other act of insolvency by Assignee and notwithstanding any rejection, disaffirment or disclaimer of this Agreement or the Franchise Agreement, Assignor shall continue to be fully liable.

5.      This Agreement is entered into in the Commonwealth of Pennsylvania and shall be construed and interpreted in accordance with its laws, which laws shall control in the event of any conflict of law.

6.      This Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, successors and assigns.

7.      Assignor and Assignee agree that they have had and will continue to have a substantial relationship with Carousel at its offices in Pennsylvania and that, with the exception of Carousel's right to seek injunctive relief in any appropriate jurisdiction, as set forth below, any action by or against them arising out of or relating to this Agreement shall be commenced and conducted only in a state or federal court of general jurisdiction located in the Commonwealth of Pennsylvania. Assignor and Assignee agree that Pennsylvania represents the most convenient forum for the parties to litigate any disputes between them. Accordingly, Assignor and Assignee irrevocably submit to the jurisdiction of such courts and irrevocably waive any objection they may have to either the jurisdiction or venue of such courts. Assignor and Assignee further irrevocably agree not to argue that Pennsylvania is an inconvenient forum or to request transfer of any such action to any other court. Carousel shall have the option, of bringing any action seeking equitable relief to enforce the terms of this Agreement or to prevent any actual or threatened breach of this Agreement in any court of competent jurisdiction in order to prevent real or threatened harm, and Assignor and Assignee consent to the entry of injunctive relief, including, without limitation, temporary restraining orders and/or preliminary and permanent injunctions without the requirement of bond, according to the usual equity rules in the jurisdiction in which such relief is sought.

Carousel Assign Assumpt Agreement (Corp) Wortman2/Carousel

8.      This Agreement shall constitute the entire integrated agreement between the parties with respect to the subject matter contained herein and shall not be subject to change, modification, amendment or addition without the express written consent of all the parties.

9.      In the event Carousel retains the services of legal counsel to enforce the terms of this Agreement, Carousel shall be entitled to recover all costs and expenses, including reasonable attorney's, expert and investigative fees, incurred in enforcing the terms of this Agreement.

10.      Each party declares that the terms of this Agreement have been completely read and are fully understood and voluntarily accepted by each party, after having a reasonable opportunity to retain and confer with counsel.  This Agreement is entered into after a full investigation by the parties, and the parties are not relying upon any statements or representations not contained in this Agreement.

11.      The obligations of Stephen A. Wortman, Carol A. Wortman, Noel L. Wortman, Kyoung Nam-Wortman and School Equities, L.L.C. under this Agreement shall be joint and several.

**I HAVE READ THE ABOVE AGREEMENT AND UNDERSTAND ITS TERMS.  I WOULD NOT SIGN THIS AGREEMENT IF I DID NOT UNDERSTAND AND AGREE TO BE BOUND BY ITS TERMS.**

IN WITNESS WHEREOF, the undersigned have affixed their signatures hereto as of the day and date first written above.

**CAROUSEL SYSTEMS, INC.**

By:_____
   William D. McKaig, Secretary

**ASSIGNOR:**

_____
Stephen A. Wortman         (Seal)

_____
Carol A. Wortman         (Seal)

_____
Noel L. Wortman         (Seal)

_____
Kyung Nam-Wortman         (Seal)

**ASSIGNEE:**

**SCHOOL EQUITIES, L.L.C.**

_____
Stephen A. Wortman

_____
Carol A. Wortman

_____
Noel L. Wortman

_____
Kyung Nam-Wortman

Carousel Assign Assumpt Agreement (Corp) Wortman2/Carousel

# Exhibit 3

**GODDARD SYSTEMS**, INC.
FRANCHISOR OF THE GODDARD SCHOOL

Member, International Franchise Association

Goddard Systems, Inc., 1016 West Ninth Avenue, King of Prussia, PA 19406 | 610-265-8510 • Fax: 610-265-8867 | GoddardSystems.com

BY FEDEX AND CERTIFIED MAIL

June 11, 2015

Noel L. Wortman & Kyung Nam-Wortman
Stephen A. Wortman & Carol A. Wortman
School Equities, LLC
The Goddard School
400 Gill Lane
Iselin, NJ 08830

Re:    Notice of Impending Franchise Agreement Expiration

Dear Franchisees/Guarantors:

This Notice of Impending Franchise Agreement Expiration ("Notice") concerns your June 30, 2000 Franchise Agreement (the "Franchise Agreement") for the operation of a Goddard School at 400 Gill Lane, Iselin, NJ 08830 (the "School"). As you know, under the June 30, 2000 Assignment and Assumption Agreement, you are the unconditional guarantors of all of the obligations of School Equities, LLC under the Franchise Agreement. In this Notice, the terms "you" and "your" refer to you and School Equities, LLC ("School Equities").

Your Franchise Agreement is set to expire pursuant to its terms on June 30, 2015. Goddard Systems, Inc. ("GSI") reminded you of this fact by email sent June 10, 2014 and several subsequent emails and conversations. Under your Franchise Agreement, you were required to give us prior notice of your intent to renew by December 30, 2014, which you did not do. We sent you our current Franchise Disclosure Document (FDD) and receipt on April 28, 2015, with a reminder on May 28, 2015, but to date you have not returned a signed FDD receipt page. Moreover, you apparently indicated recently to GSI's representative that "you are working on something else," may "go a different way," and your renewal decision will not be made until the last minute.

Enclosed with this letter are the final execution copies of the renewal Franchise Agreement and ancillary documents. Noel Wortman requested that the renewal Franchise Agreement not include Stephen and Carol Wortman, but since we never received written confirmation of that request from Stephen and Carol Wortman they remain on the documents. Once we have received their written confirmation, we can prepare a separate addendum to reflect their removal from the renewed Franchise Agreement.

Please be advised that, in order for you to continue operating a preschool as a Goddard franchisee or otherwise after June 30, 2015, you are required to execute and return all of the enclosed documents. Please consider this letter as affording you notice and a final opportunity to renew your Franchise Agreement. If you fail to achieve compliance with the

LEARNING FOR FUN. LEARNING FOR LIFE.



**GODDARD SYSTEMS,**INC.
FRANCHISOR OF THE GODDARD SCHOOL

Member, International Franchise Association

Goddard Systems, Inc., 1016 West Ninth Avenue, King of Prussia, PA 19406 | 610-265-8510 • Fax: 610-265-8867 | GoddardSystems.com

requirements of the Franchise Agreement and its express conditions for renewal (including, among other things, executing and returning to GSI the enclosed documents, signed (and notarized where indicated) on or before June 30, 2015, you will be ineligible for renewal under the Franchise Agreement and applicable law, and the Franchise Agreement will expire pursuant to its terms on June 30, 2015.

Should your Franchise Agreement expire or otherwise terminate, GSI will expect your strict compliance with your post-termination obligations under the Franchise Agreement. These obligations include, but are not limited to: (i) your obligation to cease operating the School; (ii) your obligation to immediately and permanently cease to use, by advertising or in any manner whatsoever, any equipment, confidential methods, procedures and techniques associated with the Goddard business system; (iii) your obligation to immediately and permanently cease to use the trademark, trade name and service mark THE GODDARD SCHOOL, the Goddard logo or any other distinctive forms, slogans, signs or symbols associated with the Goddard business system, including all signs, equipment, advertising materials, stationery, forms and any other articles that display GSI's trade names, trademarks or service marks.

In addition, GSI also expects your immediate compliance with the in-term and post-termination covenants not to compete set forth in Paragraph 16 of the Franchise Agreement. Paragraph 16 provides that, during the term of the Franchise Agreement and for the three-year period following its expiration or termination (or the date upon which you cease to operate the School if later), you shall not, directly or indirectly, for yourself or through, on behalf of or in conjunction with any other person, persons, partnership or corporation: (i) divert or attempt to divert any business or customer of the School to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with GSI's trade names, trademarks, proprietary marks or business system; (ii) employ or seek to employ any person who is at that time employed by GSI or by any other franchisee of GSI or otherwise directly or indirectly induce such person to leave his or her employment; and (iii) own, maintain, engage in, be employed by or have any interest in any child day care or pre-school learning center or business at the School or within a ten-mile radius of the School or any other current or proposed Goddard School (except for a Goddard School under an effective franchise agreement with GSI).

Irrespective of the impending expiration of your Franchise Agreement and your future election to renew or not to renew, you also agreed as a franchisee to honor all of your obligations under the Franchise Agreement including, without limitation, complying with all payment obligations to GSI and maintaining the School in compliance with GSI's Quality Assurance standards during the entire term of the Franchise Agreement. GSI therefore expects and will demand your full and faithful performance of all your duties and obligations under the Franchise Agreement, irrespective of your future election to renew or not to renew.

2

LEARNING FOR FUN. LEARNING FOR LIFE."



**GODDARD SYSTEMS, INC.**
FRANCHISOR OF THE GODDARD SCHOOL

Member, International Franchise Association

Goddard Systems, Inc., 1016 West Ninth Avenue, King of Prussia, PA 19406  |  610-265-8510 • Fax: 610-265-8867  |  GoddardSystems.com

The listing of items of noncompliance in this Notice shall not constitute a waiver by GSI of other items of noncompliance under the Franchise Agreement or any other agreements between you and GSI or as to any other rights or remedies GSI may have against you, whether or not such additional items of noncompliance, rights or remedies are presently known to GSI.

Because of the seriousness of this matter, please give it your immediate attention, including by bringing this letter to the attention of your counsel.

Sincerely,

Sandra G. Gibbs
Corporate Counsel

Enclosures
cc:     J. Schumacher
        R. Scopinich

# Exhibit 4

| From: | Chapman, Cindy <CChapman@goddardsystems.com> |
|---|---|
| Sent: | Tuesday, June 30, 2015 10:03 AM |
| Subject: | Renewal Documents |
| Attachments: | 2015 AAA - Woodbridge, NJ.pdf; 2015 Disclosure Acknowledgement - Woodbridge, NJ.pdf; 2015 FA Amend (Renewal) - Woodbridge, NJ.pdf; 2015 FDD Receipt - Woodbridge, NJ.pdf; 2015 Franchise Agreement - Woodbridge, NJ.pdf; 2015 Option to Lease RFR - Woodbridge, NJ.pdf; 2015 Receipt of FRD - Woodbridge, NJ.pdf; 2015 RENEWAL Termination Agree and MR - Woodbridge, NJ.pdf; 2015 Automatic Debit Authorization - Woodbridge, NJ.pdf |

Good morning Noel,

Your document package arrived today, but it is incomplete. Listed below are the documents, the number or originals to be printed, and what is required to complete each.

- Franchise Agreement (3) –        Need Kyung's notarization, Stephen and Carol's signatures and notarization.
- Transfer Amendment (3) -         Need Stephen's and Carol's signatures.
- Assignment Agreement (3) -       Need Stephen's and Carol's signatures.
- Termination Agreement (3) -      Need Kyung's notarization, Stephen and Carol's signatures and notarization.
- Option to Lease (3) –            Need Stephen's and Carol's signatures as franchisees.
- Disclosure Acknowledgement (1) - Need Stephen's and Carol's signatures.
- Franchise Document Receipt (1) - Needs to be dated the date you received your documents (June 15th) and signed by Noel, Kyung, Stephen and Carol.

The following documents are required, but were not returned to us in your package:

- Automatic Debit Authorization (1)
- Franchise Disclosure Document Receipt (which you received April 30th and must be dated when received) (1)

I have attached PDFs of all of the above documents. Please complete and return all documents via email by close of business today. You may then send all originals to GSI execution.

Thank you for your attention to this matter.

Cindy Chapman, CFE
Director, Contracts and Administration

EMAIL: cchapman@goddardsystems.com
DIRECT: 610-205-3198
FAX: 610-205-1800
MOBILE: 610-733-5733
- - - - -
1016 W. Ninth Avenue
King of Prussia, PA 19406
- - - - -
GoddardSystems.com

1



# Exhibit 5



**GODDARD SYSTEMS,**INC.
FRANCHISOR OF THE GODDARD SCHOOL

Member, International Franchise Association

Goddard Systems, Inc., 1016 West Ninth Avenue, King of Prussia, PA 19406  |  610-265-8510 • Fax: 610-265-8867  |  GoddardSystems.com

BY FEDEX (w/attachments) AND CERTIFIED MAIL (w/o attachments)

July 8, 2015

Stephen A. Wortman & Carol A. Wortman
Noel L. Wortman & Kyung Nam-Wortman
School Equities, LLC
The Goddard School
400 Gill Lane
Iselin, NJ 08830

Re:    Notice of Franchise Agreement Expiration / Final Opportunity to Renew

Dear Franchisees/Guarantors:

This Notice of Franchise Agreement Expiration / Final Opportunity to Renew ("Notice")
concerns your June 30, 2000 Franchise Agreement (the "Franchise Agreement") for the
operation of a Goddard School at 400 Gill Lane, Iselin, NJ 08830 (the "School").  As you know,
under the June 30, 2000 Assignment and Assumption Agreement, you are the unconditional
guarantors of all of the obligations of School Equities, LLC under the Franchise Agreement.  In
this Notice, the terms "you" and "your" refer to you and School Equities, LLC ("School
Equities").

*Your Franchise Agreement expired by its terms on June 30, 2015.*  Although we did
receive certain documents from you on June 30, 2015, they are deficient in several respects.
By electronic mail dated June 30, 2015, Cindy Chapman, GSI's Director of Contract
Administration, wrote you to itemize the incomplete and missing parts of your renewal
package.  You have not responded to this email.  The following items are incomplete or
outstanding, and your renewal is ineffective until all deficiencies have been corrected:

- Franchise Agreement (3 copies): Need Kyung's signature notarized, Stephen and
  Carol's signatures and notarization.

- Transfer Amendment (3 copies): Need Stephen's and Carol's signatures.

- Assignment Agreement (3 copies): Need Stephen's and Carol's signatures.

- Termination Agreement (3 copies): Need Kyung's signature notarized, Stephen and
  Carol's signatures and notarization.

- Option to Lease (3 copies): Need Stephen's and Carol's signatures as franchisees.

- Disclosure Acknowledgement (1 copy): Need Stephen's and Carol's signatures.

LEARNING FOR FUN. LEARNING FOR LIFE.



**GODDARD SYSTEMS,** INC.
FRANCHISOR OF THE GODDARD SCHOOL

Member, International Franchise Association

Goddard Systems, Inc., 1016 West Ninth Avenue, King of Prussia, PA 19406   |   610-265-8510 • Fax: 610-265-8867   |   GoddardSystems.com

- Franchise Document Receipt (1 copy): Must be dated the date you received your documents (June 15) and signed by Noel, Kyung, Stephen and Carol.

In addition, the following documents are required to be executed and received by GSI in order to complete the renewal process, and were not returned to GSI in your package:

- Automatic Debit Authorization (1 copy): Must be completed and signed.

- Franchise Disclosure Document Receipt (1 copy): Must be dated the date you received the FDD (April 30).

In a final attempt to assist you with the renewal process, GSI again encloses copies of all of the above-referenced documents.  Please ensure that all of these documents have been properly executed, notarized (where indicated), and dated, and send all originals to GSI for execution.  If we receive all of the properly completed original documents by *July 20, 2015*, we will retroactively renew your Franchise Agreement.  If there is any confusion as to what is required, please contact me immediately.

Please consider this letter as affording you final notice and a final opportunity to renew your Franchise Agreement.  If we do not receive the properly executed, notarized (where indicated), and dated documents by July 20, 2015, you will be considered ineligible for renewal, and GSI will be compelled to take further appropriate action.

If you decide not to complete the renewal process, GSI will expect your prompt and strict compliance with your post-termination obligations under the Franchise Agreement.  These obligations include, but are not limited to: (i) your obligation to cease operating the School; (ii) your obligation to immediately and permanently cease to use, by advertising or in any manner whatsoever, any equipment, confidential methods, procedures and techniques associated with the Goddard business system; (iii) your obligation to immediately and permanently cease to use the trademark, trade name and service mark THE GODDARD SCHOOL, the Goddard logo or any other distinctive forms, slogans, signs or symbols associated with the Goddard business system, including all signs, equipment, advertising materials, stationery, forms and any other articles that display GSI's trade names, trademarks or service marks.

In addition, GSI will also expect your immediate compliance with the post-termination covenant not to compete set forth in Paragraph 16 of the Franchise Agreement.  Paragraph 16 provides that, for the three-year period following the termination of the Franchise Agreement or the date upon which you cease to operate the School, whichever is later, you shall not, directly or indirectly, for yourself or through, on behalf of or in conjunction with any other person, persons, partnership or corporation:  (i) divert or attempt to divert any business or customer of the School to any competitor, by direct or indirect inducement or otherwise, or

2

LEARNING FOR FUN. LEARNING FOR LIFE.



**GODDARD SYSTEMS,** INC.
FRANCHISOR OF THE GODDARD SCHOOL

Member, International Franchise Association

Goddard Systems, Inc., 1016 West Ninth Avenue, King of Prussia, PA 19406  |  610-265-8510 • Fax: 610-265-8867  |  GoddardSystems.com

do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with GSI's trade names, trademarks, proprietary marks or business system; (ii) employ or seek to employ any person who is at that time employed by GSI or by any other franchisee of GSI or otherwise directly or indirectly induce such person to leave his or her employment; and (iii) own, maintain, engage in, be employed by or have any interest in any child day care or pre-school learning center or business within a ten-mile radius of the School or any other current or proposed Goddard School (except for a Goddard School under an effective franchise agreement with GSI).

Irrespective of your failure to date to renew your Franchise Agreement and your future election to renew or not to renew, you agreed as a franchisee to honor all of your obligations under the Franchise Agreement including, without limitation, complying with all standards and payment obligations to GSI during the entire term of the Franchise Agreement. GSI therefore expects and will demand your full and faithful performance of all your duties and obligations under the Franchise Agreement, whether or not you decide to renew.

The listing of items of noncompliance in this Notice shall not constitute a waiver by GSI of other items of noncompliance under the Franchise Agreement or any other agreements between you and GSI or as to any other rights or remedies GSI may have against you, whether or not such additional items of noncompliance, rights or remedies are presently known to GSI.

Because of the seriousness of this matter, please give it your immediate attention, including by bringing this letter to the attention of your counsel.

Sincerely,

Sandra G. Gibbs
Corporate Counsel

cc:   J. Schumacher
      R. Scopinich

3

LEARNING FOR FUN. LEARNING FOR LIFE.